111-0032 Reyes Group v. Francisco Navarro Which case is this? This is Reyes v. Francisco Navarro. It's the third one. Yes. And who do you represent? My name is Stacey Hill and I represent Reyes Group. May it please the court. The commission must base their decisions on evidence in the record and must refrain from basing their findings on imagination, speculation, or conjecture. In this case, not only is the commission's decision against the manifest weight of the evidence, but the foundation of its decision is based on a very crucial imagined fact, which is, since September 2, 2003, the employee's condition never got better. All of the evidence in the record supports an opposite conclusion. We know that the employee had a pre-existing condition at L4-L5. On September 2, 2003, he aggravated that condition while working for the employer. He underwent a course of physical therapy and epidural steroid injections. On May 29, 2004, he was released to return to work full duty. With no work available, he started his own concrete business and his claim proceeded to hearing. Did the evidence show his lower back condition had fully resolved itself in May of 2004? Not only did the evidence show that his back condition had fully resolved as of May 29, 2004, but the arbitrator found that he had reached maximum medical improvement and the commission affirmed this finding. During the first hearing, the employee testified that he was ready, willing, and able to work full duty. And like I just said, the commission affirmed the finding that he had reached maximum medical improvement. All of the evidence supports that his aggravation had subsided and that he was better and he was working. What about claimants' medical records show that during follow-up visits with Dr. Slavin throughout the remainder of 2004, he continued to report moderate levels of pain? During his visits to Dr. Slavin, he was found to only have subjective complaints of pain and he was neurologically stable when Dr. Slavin released him to work full duty on May 29, 2004. He also underwent a functional capacity evaluation that returned him to work full duty. Was he performing the same duties that he performed prior to the September 2003 accident? He was performing the same duties. Whether the frequency of that remained the same is unclear. Just because the claimant moved up in the world and started his own business and had employees doing the heavy lifting for him, he also testified during the first trial that he had to do what he had to do, and that included helping his team. Well, his work for your company or for the company you're representing did involve heavy lifting, correct? That's correct. Okay. So following the accident, he becomes self-employed. He's working in a supervisory capacity. He's not doing heavy lifting. I think during the first trial, he testified he was operating in a supervisory capacity, but he was also doing what he needed to do in order to get the job done. It was a new business. He was just getting it off the ground, and he did testify that he did heavy lifting in operating his business. Well, the commission found the other way, didn't they? And regardless of whether or not he was doing the exact same thing that he was doing before he was released full duty on May 29, 2004, he had reached maximum medical improvement and had been working full duty. He testified under oath that after the conclusion of the first hearing in January 2005 that he felt okay until May 2006. When he presented to Dr. Slavin at that time, he had been working full duty, running his own concrete business for almost two years. At that time, a year and a half had passed since the first hearing. There is no evidence in the record that the employee remained plagued by his condition for a year and a half after the first hearing. There is no reliable testimony to support this conclusion, and there are no corroborating medical records. There were no witnesses, not even his own sons, whom he'd been working with for several years, came in to testify. The commission either ignored an entire year and a half of health, or they speculated that the employee must have remained symptomatic during that year and a half, despite the employee's own testimony under oath that he had been feeling okay during that year and a half. But what did Dr. Slavin say in his reports about the defendant's medical history, his condition during that period of time? Dr. Slavin said in his report in February 2008, which of note is that all of his reports before that were handwritten, and this one was clearly prepared in anticipation of the hearing, that his condition had remained the same since the last time he saw him. The last time that he saw him was April 28, 2007. Dr. Slavin also said that he had a recent exacerbation of a chronic condition. I don't know why Dr. Slavin would choose to use the phrase recent exacerbation if what he really meant to convey was that he had remained symptomatic for the past five years. And so what do you, how do you interpret that? What do you believe the subtle or hidden meaning is in that? I don't think there is any hidden meaning in his report. He says that he had a recent exacerbation of a chronic condition, a chronic condition that preexisted our accident. And he was able to work four or five years full duty without any problems. He had our accident. He had an aggravation. He got back to a regular, healthy working level. And a year and a half later, he had another aggravation. If we're going to assign every single ---- Aggravation or ---- So it could be an incident that he could be ---- Well, I don't know because, you know, the employer didn't have anybody following him around for a year and a half after his hearing. I don't know what happened. And it would be speculative to say that something did happen. But what we do know, what we do know is in the evidence is that there is an entire year and a half of no medical treatment after the commission found that he had reached maximum medical improvement. What did the 2003 MRI reveal? The ---- What was the result of his MRI in 2003? In 2003, his MRI was the same as it was in 2007. He had chronic lumbar spondylosis at L4-L5 and narrowing in the neural ---- So according to the MRIs, nothing changed. Nothing had changed. Between 2003 and ---- Nothing had changed. Except he now complains that he's symptomatic again. Correct. And if you actually read the deposition from the first hearing, Dr. Slavin did opine that the condition shown in the MRI, there was no way whether he could know if that was causally related. What he did know is that he became symptomatic after the accident. So his findings in his lumbar spine were not related to our accident. They were aggravated. Yet in 2007, he goes back to Dr. Slavin complaining of being symptomatic again. That's correct. And throughout ---- That is to say he wasn't symptomatic again. Well, he very well may have been symptomatic again in May 2006. But, again, that was two years after he had been working full duty. It was no longer ---- causation doesn't linger on forever. Why not? The commission found that he had reached maximum ---- Who says causation doesn't linger on forever if it's a permanent injury? You've got exactly the same injury or the same objective finding in 2007 that you had in 2003. So we have no intervening cause. We don't have an additional injury. We have a injury, and it was symptomatic, asymptomatic, and symptomatic again. Who's to say he doesn't recover for the second period of time when he's symptomatic and can't work? Have you got a case that says that? Yeah. Well, there are actually several cases. There is Weyer, which is a pretty recent case. And in Weyer, during the first 19B hearing, the arbitrator found that the employee's shoulder condition was compensable. And then during the second 19B hearing, the arbitrator found that the shoulder had reached maximum medical improvement and the condition ceased to be causally related. And since the condition had ceased to be causally related, the employer did not need to prove intervening, superseding accident. Well, the problem that you have is, in this particular case, it would appear to me that based upon the MRIs, it would have to be causally related. If there's no additional injury, how could it not be? Well, like I said, Dr. Slavin testified during the first hearing that the findings on the MRI were not caused by the accident. The findings were there already. And if causation is going to go on forever, then really the FMV cement company, the company that he worked for in 1997 when he injured the same area of his back, then really that company should be liable as we stand here in 2011. Counsel, let's go back to another fundamental matter. You seem to take issue with the fact that only the claimant is testifying to what you're describing as subjective claims of pain. But isn't it within the province of the commission to judge the believability of the witnesses, including the claimant, the credibility and the weight of the evidence? So why can't the commission believe the claimant? Well, I think that that is perfectly acceptable for the commission to believe the claimant. But the fact of the matter is, in this case, is that there is no evidence for at least a six-month period of time that he remained symptomatic, not even his own testimony. Whether his testimony was credible or incredible, there is no evidence to support that after he returned to work full duty and before he went to the doctor on May 31, 2006, that he continued to be symptomatic. In fact, he had been working full duty for two years. This case is actually similar to Zion Benton. In that case, the employee had an injury at work, and he returned to work and not in a full-duty capacity. And during that period, when he was working quasi-full duty, he sustained another accident, repetitive trauma. He was in so much pain that he had to go home. And it actually, the employer had changed insurance companies between the first accident and the second accident, so the two companies ended up hashing it out. And this Court affirmed the commission's finding that he had returned to work full duty, and he worked quasi-full duty because he needed assistance, and the continued work was an intervening, superseding accident. And so the second... We affirm the commission's finding in that regard. Is that right? That's correct. So in this case, you don't want us to affirm it. You want us to reverse it. Correct. That means the opposite has to be clearly apparent. In manifest weight, there's no one right answer. It depends on what the commission chooses to believe. In this particular case, they chose to believe causal connection, and that's a fact issue. That's theirs to decide. So you have to tell us why the opposite conclusion is clearly apparent. Because there's not only is it not against the manifest weight of the evidence, there is no evidence in the record to support that he continued to be symptomatic after May 29, 2004. There's no testimony. He testified. He didn't testify. When told the doctor my back hurts again. That was two years after... I understand that. So now the question became whether the symptoms that he experienced two years later were causally related to the original accident. The commission found that it was. Tell me why it wasn't. But the commission imagined that entire two years that it remained causally related because there's no evidence in the record. There's no chain links to put together to take you from May 29, 2004 to May 31, 2006. There's an entire two-year period of missing medical evidence. Not only is there no medical evidence, but there's no testimony to support that he continued to have problems. Counsel, your time is up. Do you have time? Counsel, please. May it please the Court, Counsel. My name is John Castaneda. I'm here on behalf of Defendant Apolli Francisco Navarro. I'd first like to address the Justice's question regarding testimony of Mr. Navarro. Mr. Navarro did testify that his back pain was getting worse and he was still taking pain medication and muscle relaxers between the time he was discharged by Dr. Slavin and before he returned to see him in 2006. So you take issue with your opponent's argument there's no quote-unquote evidence to support the commission's decision? That is correct. In fact, if you also note from the first record that the December 2004 FCE showed that Mr. Navarro was actually his abilities to function were less than what his job required. So despite the fact that Dr. Slavin placed him at MMI, he still had limitations relative to his work-related injury, which Dr. Slavin opined in his deposition that he had lumbar radiculopathy from the spinal stenosis as a result of an aggravation of his preexisting condition. You also should note that that first decision was on appeal and went through its normal course of appeal for which would explain in part why Mr. Navarro was not getting any treatment after he was discharged by Dr. Slavin because the case was in litigation and therefore was not being authorized. Once the appeal was completed, the commission rendered a decision, Mr. Navarro returned to Dr. Slavin and at that time Dr. Slavin recommended a new course of treatment. He also ordered an MRI which demonstrated the same exact findings that he had back in 2003. So there wasn't a material change in his condition. It was the same condition which was being exacerbated by time going on and also by his continual activities. But it wasn't a point to where there was a new injury, nor is there any medical evidence suggesting that Mr. Navarro ever suffered a new injury. And this is why the case is different from Zion-Benton because in Zion-Benton you actually have a second accident. And in Weyer, which was commented by counsel, you had a new diagnosis. You had a slap lesion of the injured worker in his shoulder which was different from his original shoulder injury. And so in the second 19-B hearing, the arbitrator said, well, you've got a new diagnosis. I don't think that's causally related. Here we have the exact same diagnosis, the exact same condition, and he's trying to go for treatment. Dr. Slavin has outlined what his treatment plan is, medication, which he tried, and he referred him to a pain clinic. I think the commission is within the province of the commission to examine the record and make reasonable inferences as to what the record supports in terms of causal connection. And on this ‑‑ So the employer submitted a report from Dr. Spencer, correct? That is correct. Is there anything in Spencer's reports that would be favorable to the claimant's case? Well, I think what was most favorable is that Dr. Spencer indicated in his opinion that there was no medical condition, no change in the MRI that was performed on Ms. Navarro in 2003 and 2007. He found the same exact medical condition in the MRI, but then he went on to say that it was not causally related. Even though he did not perform a physical examination of Ms. Navarro, he did a record review. At least on that point, would it not be considered to be somewhat corroborative of Slavin's report? Yes. Yes, I would agree. I would also note for the justices that Mr. Navarro, when he went to open his own business, was doing much lighter work, and he did testify that he was not doing the same type of work that he did at the time of the original hearing, and that his sons, who worked in the business, were doing most of the heavy work, and he would do some light finishing brushing, but was nowhere near doing the same type of work that he did before. So the argument that there must have been some other type of cause just doesn't exist in the record because he was not doing the same type of work, there was no new accident, he had the same condition, and the commission could reasonably infer that that was sufficient to establish a continual causal connection. What did the commission mean when it talked about Weaver, and it says that the Petitioner has not met this burden? Do you know what they were talking about? I'm sorry. Well, the commission decision. Yes. The second paragraph talks about the Petitioner having the burden of establishing the Commission of L.B. subsequent to the first 19B hearing, that such conditions were related to his 2003 work in, and the commission said he didn't prove it, he didn't meet that burden. What's that mean? Well, I think the commission meant to say that the first 19B, that case was established, but that the Petitioner had to further establish causal connection, even though it was my opinion that Irizarry allowed causal connection to continue, unless one shows an intervening accident. I'm not sure why that particular paragraph is in there, because it actually doesn't comport with the rest of the commission decision, but it's my understanding that that was the burden they were trying to place on the Petitioner, and they actually cited the Weyer case as saying that that case is more relevant to the discussion as to whether or not Mr. Navarro had carried his burden with regard to causal connection. So I think we understand your argument in a manifest way. What about the opponents challenging the commission's order regarding prospective medical treatment? What's your argument on that? Well, their argument, Your Honor, goes to the fact that they claim that Dr. Slavin's recommendations were too vague, and if you look at his records and his reports, you'll see that actually his recommendations were threefold. He wanted to try medication. If medication didn't work, he was going to refer Mr. Navarro for a pain clinic, and if the pain clinic didn't work, he would then move on to surgery. But all of the recommendations were conditioned on Mr. Navarro not achieving well-being from the previous recommendation, and at the time that Dr. Slavin wrote his last report, he had already tried the medication and thus referred Mr. Navarro for the pain clinic. If Mr. Navarro were to alleviate his condition from the pain clinic, he would then not need the surgery. Thank you. Any questions? Thank you. Pro Bono. The employee testified during the second hearing that he had been feeling okay until May 31, 2006, and then a minute later, he testified that his back pain had been getting worse for the past three years, which counsel just referred to. He did not testify that he had been taking medication all along, and three years prior to the second trial was June 2005, which was one year after he was released to work full duty and approximately six months after the conclusion of the first hearing. This one-year inconsistency in his testimony should raise some considerable red flags as to his credibility, but putting his credibility aside, there is still no evidence pertaining to this six-month period of time. I'm not suggesting that in order to prove causation that the employee needs to give us a day-by-day, play-by-play, but a six-month black hole is unacceptable in a tribunal of law. We have no idea what happened between the first hearing, the closing of proofs of the first hearing, and six months after that. And I argue that causation does not linger on indefinitely. At that point, he had reached maximum medical improvement, and the only liability left on the part of the employer would have been his permanent partial disability. What did your opponent's counsel mean when he asked to be excused from being here today? I'm sorry? Well, wasn't there a letter written by Mr. Castaneda that he was not going to be able to be here today? That's correct. He thought that he was called for jury duty, and he didn't think that he'd be able to make it, but he did. And that's Mr. Castaneda there. All right, thank you. Thank you. The court will take the matter under advisory for disposition.